IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JAKE MENDEL, etc., et al., }<br>}<br>Plaintiffs, }<br>}<br>v. }<br>}<br>MORGAN KEEGAN & COMPANY, }<br>INC., }<br>}<br>Defendant. } | CIVIL ACTION NO.<br>13-AR-1630-S |

**<u>MEMORANDUM OPINION</u>**

On March 20, 2014 this court entered an order in the above entitled case staying the consideration of cross-motions for summary judgment filed by plaintiffs, Jake Mendel, etc., et al. ("Mendel Parties") and by defendant, Morgan Keegan Company, Inc. ("Morgan Keegan"). After becoming aware of an appeal pending in the Supreme Court of Alabama in a case entitled *Municipal Workers Compensation Fund, Inc. v. Morgan Keegan*, No. 1120532, this court concluded that the wisest course was to await the outcome in *Municipal Workers* before deciding this case. This court, of course, could not predict what the Supreme Court of Alabama would decide on the issues before it in *Municipal Workers*, but this court could and did predict that whatever the Supreme Court ultimately held might very well prove dispositive in the case before this court. On April 3, 2015 the Supreme Court handed down a unanimous decision in *Municipal Workers*, having the effect of lifting the stay in this court and placing the cross-motions

1

under submission.

The instant case arrived in this court on August 30, 2013 when Morgan Keegan removed it from the Circuit Court of Jefferson County Alabama, where it had been filed on August 2, 2013 by Mendel Parties as an "appeal" under the provisions of Alabama Rules of Civil Procedure 71B and 71C of an arbitration award in which Morgan Keegan had been ordered to pay Mendel Parties the sum of $279,500.31, which Mendel Parties contended was the product of "evident partiality" by an arbitrator and was woefully inadequate to compensate them for the losses they had sustained as a result of Morgan Keegan's misconduct while acting as their investment advisor. Alabama Rules 71B and 71C are interesting and strange. They are also unique and peculiar to Alabama. There is nothing remotely like them among the Federal Rules of Civil Procedure. The pertinent provisions are:

> **Rule 71B. Appeals from arbitration awards.**
> (a) *Who may appeal*. Any party to an arbitration may file a notice of appeal from the award entered as a result of the arbitration.
> (b) *When filed*. The notice of appeal shall be filed within thirty (30) days after service of notice of the arbitration award. **Failure to file within thirty (30) days shall constitute a waiver of the right to review**.
> (c) *Where filed*. The notice of appeal shall be filed with the clerk of the circuit court where the action underlying the arbitration is pending or if no action is pending in the circuit court, then in the office of the clerk of the circuit court of the county where the award is made.
> \* \* \*
> (f) *Procedure after filing*. The clerk of the circuit court promptly shall enter the award as the final judgment of the court. Thereafter, as a condition precedent to

further review by any appellate court, **any party opposed to the award may file, in accordance with Rule 59, a motion to set aside or vacate the judgment based upon one or more of the grounds specified in Ala. Code 1975, § 6-6-14, or other applicable law**. The court shall not grant any such motion until a reasonable time after all parties are served pursuant to paragraph (e) of this rule. The disposition of any such motion is subject to civil and appellate rules applicable to orders and judgments in civil actions.
    (g) *Appellate review*. An appeal may be taken from the grant or denial of any Rule 59 motion challenging the award by filing a notice of appeal to the appropriate appellate court pursuant to Rule 4, Alabama Rules of Appellate Procedure.
(emphasis added).

**Rule 71C. Enforcement of arbitration awards**.
    (a) *Who may enforce*. Any party to an arbitration may seek enforcement of the award entered as a result of the arbitration.
    (b) *When filed*. If no appeal has been filed pursuant to Rule 71B within thirty (30) days of service of the notice of the award, thereby resulting in a waiver of the right to review, the party seeking enforcement of the award may at any time thereafter seek enforcement of the award in the appropriate circuit court as set forth in paragraph (c) of this rule.
    (c) *Where filed*. The motion for entry of judgment shall be filed with the clerk of the circuit court where the action underlying the arbitration is pending or if no action is pending in the circuit court, then in the office of the clerk of the circuit court of the county where the award is made.
    (d) *What filed*. A party seeking enforcement of an award shall file a motion for entry of judgment, and shall attach to the motion a copy of the award, signed by the arbitrator, if there is only one, or by a majority of the arbitrators.

Promptly after receiving Morgan Keegan's notice of removal, Mendel Parties filed a motion to remand, contending, *inter alia*, that they were required by Rules 71B and 71C to attack the arbitration award in the Jefferson County Circuit Court and therefore could not have challenged it in this court. Mendel

Parties argued *a fortiori* that because a prerequisite to removal under 28 U.S.C. § 1441(a) is that the federal court have original jurisdiction over the controversy, Morgan Keegan's removal was improper despite the complete diversity of citizenship and value of more than $75,000 in controversy that would otherwise have created jurisdiction under 28 U.S.C. § 1332. This court was faced with a case of first impression. No Alabama federal court had previously been asked to decide this jurisdictional question unique to Alabama.

On October 24, 2013, the court held an in-chambers hearing on Mendel Parties' motion to remand and explored in depth with the parties the problems arising under the procedural circumstances and under these unique and confusing Alabama rules for enforcing or attacking an arbitration award. Only after Morgan Keegan conceded that the law of Alabama, which clearly had been invoked by the Mendel Parties, would follow the case from the Jefferson County Circuit Court to this court and would provide Mendel Parties whatever means Alabama law provides for attacking the arbitration award, did Mendel Parties give up their insistence that the case was improperly removed.

At that same oral hearing, Morgan Keegan insisted that the arbitration award was not supported by the evidence and that the arbitrators committed gross error in awarding any sum whatsoever to Mendel Parties. Nevertheless, Morgan Keegan refused the

court's somewhat jesting invitation to join Mendel Parties in their request that the award be set aside and that the controversy be assigned to a new panel. This, of course, would have ended this case. While not itself timely invoking Rules 71B and 71C and thus having waived its right to challenge the award Morgan Keegan, has not tendered to Mendel Parties the sum of $279,500.31 awarded it by the arbitrators.

Being convinced that Alabama procedural rules cannot grant exclusive jurisdiction to Alabama courts over a challenge to an arbitration award entered in Alabama if the requisites for federal jurisdiction under 28 U.S.C. § 1332 exist, and being further convinced that the law of Alabama applies to the review of an arbitration award arrived at in Alabama, this court denied Mendel Parties' motion to remand and entered a foreshortened scheduling order fixing deadlines for the completion of discovery and the filing of dispositive motions.

A Rule 56 motion can be granted only if undisputed material facts entitle the movant to judgment as a matter of law. In this case the dispute boils down to a hot debate over questions of **law** under the Federal Arbitration Act and the Alabama Arbitration Act, as interpreted by Alabama courts, but the few **facts** upon which plaintiffs/movants, Mendel Parties, rely are not in dispute. Morgan Keegan has made the same arguments to this court with respect to what must be proven in order to obtain the

vacatur of an arbitration award that it made to the Supreme Court of Alabama in *Municipal Workers*, a case in which it was a party and in which the Supreme Court flatly disagreed with it. In other words, as it has turned out, if the Supreme Court of Alabama has correctly enunciated the controlling principles of Alabama law, the material undisputed facts in this case lead to the same conclusion reached by the Supreme Court of Alabama.

## Undisputed Material Facts

Morgan Keegan acted as the broker and investment advisor to Mendel Parties. As such, it invested Mendel Parties' funds in investment products that produced very substantial losses. This triggered a claim by Mendel Parties against Morgan Keegan followed by an application for the arbitration of the claim pursuant to the arbitration provision in the contract between the parties. This provision called for the arbitral services of the Financial Industry Regulatory Authority ("FINRA") and further provided that FINRA rules would apply. FINRA thereupon furnished the parties a list of potential arbitrators, including John F. Allgood. Allgood and two others were chosen as arbitrators. Allgood was the presider.

The FINRA rules unequivocally require potential arbitrators to disclose to the parties not only any direct or indirect individual financial or personal interest in the outcome of the arbitration, but any existing or past, direct or indirect

financial, business, professional, family, social or other relationships with any of the parties. In Allgood's formal disclosure form, under the section entitled "Employment," he acknowledged that from September 2001 until the date of his disclosure, he was "of counsel" to Ford & Harrison LLP, a law firm. He then answered "**No**" to the core question "Have you had any professional or social relationships with any party in this proceeding or the firm for which they work?".

    Allgood did not reveal the fact that Ford & Harrison LLP had an ongoing professional relationship with Morgan Keegan. Morgan Keegan is a large and well-known broker and investment advisor and therefore a good client to have. This court has no problem in concluding, from an exercise of common sense and its experience, that a "conflicts" check by Ford & Harrison LLP would easily have revealed the professional relationship between it and Morgan Keegan. Morgan Keegan has pointed out that Mendel Parties have offered no proof that Allgood, who presided over the arbitration proceeding and who co-authored the arbitral award, was **actually** biased in favor of Morgan Keegan or against Mendel Parties, or even that Allgood **actually** knew of Ford & Harrison LLP's professional relationship with Morgan Keegan. Mendel Parties, to the contrary, have consistently taken the position that **actual** knowledge by Allgood is not necessary to their claim of "evident partiality."

## Do Mendel Parties Meet the Alabama Standards for Obtaining the Vacatur of an Arbitration Award?

In their original "appeal" and their motion to vacate Mendel Parties expressly invoked 9 U.S.C. § 10(a) (the Federal Arbitration Act), Ala. Code § 6-6-14 (1975) (the Alabama Arbitration Act), and the Alabama common law. From that moment to this, Mendel Parties have contended that Allgood's nondisclosure of his law firms's professional relationship with Morgan Keegan violated the FINRA mandatory rules, which were incorporated into the arbitration agreement, and constituted conduct that demonstrated the "evident partiality" under the Federal Arbitration Act and the Alabama Arbitration Act not automatically vitiated the arbitration award.

There is no reason for the court to retreat from its earlier conclusion that the rights and responsibilities of the parties are dependent upon, and are to be determined by, the law of Alabama. See MOORE'S FEDERAL PRACTICE (3d ed.), § 107.31[4], which encapsulates the Erie Doctrine as follows:

> [I]f removal is grounded in diversity, the substantive legal issues are governed by state law.

Likewise, there is no reason to deny that the law of Alabama is what the Supreme Court of Alabama says it is, whether it is said unanimously by that court or by a simple majority of its justices.

The following quotations from *Municipal Workers*, in which an

investor attacked an arbitration because the arbitrators had not revealed prior relationships with Morgan Keegan make quite clear the law of Alabama as applicable to the facts of the instant virtually identical case.

From page 46 of the slip opinion:

> [T]his Court agrees with the trial court's finding that arbitrator disclosure is the "cornerstone" of FINRA arbitration and that the arbitrator has a continuous and imperative duty to disclose any relationships, experiences, and background information "that may affect—or even appear to affect—the arbitrator's ability to be impartial." We further agree with the trial court's conclusion that Julavits and Kunis both failed to disclose certain information, as discussed in detail above, and that the failure to disclose this information was contrary to the FINRA Rules relating to arbitrator disclosure.

From page 47 of the slip opinion:

> Because we find dispositive the arguments as they relate to "evident partiality," 9 U.S.C. § 10(a)(2), we will address those arguments first. The Fund argues that the judgment entered on the arbitration award is due to be vacated because the failure by Julavits and Kunis to make the disclosures discussed above created a reasonable impression of bias constituting an "evident partiality" on the part of the arbitrators under 9 U.S.C. § 10(a)(2). After thoroughly surveying caselaw from various federal courts, this Court, in *Waverlee Homes, Inc. v. McMichael*, 855 So. 2d 493 (Ala. 2003), adopted the "reasonable impression of partiality" as the standard for determining whether evident partiality exists under 9 U.S.C. § 10(a)(2).

From page 48 of the slip opinion:

> Justice Murdock, writing for the Court in *Lexington Insurance Co. v. Southern Energy Homes, Inc.*, 101 So. 3d 1190 (Ala. 2012), aptly explained this Court's adoption in *Waverlee Homes* of the "reasonable-impression-of-partiality" standard and what has become known as **"nondisclosure" cases versus "actual-bias" cases**. (emphasis added).

From pages 51 and 52 of the slip opinion:

> "'The policies of 9 U.S.C. § 10 also support the notion that **the standard for nondisclosure cases should differ from that used in actual bias cases. In a nondisclosure case, the integrity of the process by which arbitrators are chosen is at issue. Showing a "reasonable impression of partiality" is sufficient in a nondisclosure case because the policy of section 10(a)(2) instructs that the parties should choose their arbitrators intelligently.** *Commonwealth Coatings*, 393 U.S. at 151, 89 S.Ct. at 340 (White, J., concurring). The parties can choose their arbitrators intelligently only when facts showing potential partiality are disclosed. Whether the arbitrators' decision itself is faulty is not necessarily relevant. But in an actual bias determination, the integrity of the arbitrators' decision is directly at issue. That a reasonable impression of partiality is present does not mean the arbitration award was the product of impropriety.'" [*Schmitz*], 20 F.3d at 1046–47 (emphasis added by the Supreme Court of Alabama).

From pages 53 and 54 of the slip opinion:

> MAM and Morgan Keegan argue that the Fund has failed to establish that Kunis was even aware of the facts relating to the existence of a business relationship and that Kunis's lack of knowledge relative to the existence of a business relationship precludes an (sic) finding of a reasonable impression of impartiality constituting a finding of evident partiality. The Fund counters with the argument that, where an arbitrator has a duty to investigate possible conflicts, the law will impose constructive knowledge of any undiscovered conflict upon the arbitrator where the arbitrator does nothing to fulfill his or her duty to inform himself or herself of possible conflicts. MAM and Morgan Keegan rely on *Gianelli Money Purchase Plan & Trust v. ADM Investor Services, Inc.*, 146 F.3d 1309 (11th Cir. 1998), in support of its position that actual knowledge of a potential conflict is necessary to establish a "reasonable impression of impartiality" constituting a finding of "evident partiality."

From pages 58 through 61 of the slip opinion:

> It appears that the Eleventh Circuit is the only court of appeals that has "adopted a per se rule that a finding of evident partiality is precluded by an arbitrator's lack of 'actual knowledge of the information upon which [an] alleged "conflict" was founded.'" *New Regency Prods., Inc. v. Nippon*

*Herald Films, Inc.*, 501 F.3d 1101, 1109 (9th Cir. 2007) (quoting *Gianelli*, 146 F.3d at 1313).

In *Schmitz v. Zilveti*, 20 F.3d 1043 (9th Cir. 1994), a case surveyed by this Court and relied on in part in *Waverlee Homes*, an NASD arbitrator failed to disclose in his arbitrator-disclosure forms that his law firm had represented the parent company of the prevailing party in the arbitration on at least 19 occasions during a 35-year period, with the most recent representation occurring approximately 21 months before the arbitration. The record revealed that the arbitrator had run a "conflict check" for the subsidiary company only, rather than for both the subsidiary company and the parent company, even though the arbitrator had reviewed documents that indicated that the entity participating in the arbitration was a subsidiary of the parent company. The NASD rules in effect at the time *Schmitz* was decided are identical to the FINRA Rules applicable in this case. The NASD rules were summarized by the appellate court as follows:

> "[A]n arbitrator must disclose (1) '[a]ny direct or indirect financial or personal interest in the outcome'; (2) 'any ... financial, business, professional, family, or social relationships that are likely to affect impartiality or might reasonably create an appearance of partiality or bias'; and (3) any personal relationships with any party, its counsel, or witnesses. [NASD Code § 23(a)]. These relationships must be disclosed whether maintained, presently or previously, by the arbitrators or 'members of their families or their current employers, partners, or business associates.' *Id*. The NASD Code also requires arbitrators to make an investigation regarding potential conflicts of interest. NASD Code section 23(b) provides: 'Persons who are requested to accept appointment as arbitrators should make a reasonable effort to inform themselves of any interests or relationships described in Paragraph (a) above.'"

*Schmitz*, 20 F.3d at 1044.

The losing party to the arbitration sought to have the arbitration vacated pursuant to 9 U.S.C. § 10(a)(2), arguing that the arbitrator was "evidently partial." The federal district court held that a party seeking to vacate an arbitration award based on "evident partiality" must prove facts establishing a reasonable impression of evident partiality and that arbitrators are required to disclose only those facts of which they are aware at the time of the hearing. The court then found that because the arbitrator was unaware of his law firm's conflict at the time of the

11

>  arbitration hearing the movants had failed to meet their burden of proof. Thus, the district court held that no "evident partiality" was present. *Schmitz*, *supra*.
>       In reversing the judgment of the district court and determining that the arbitration award was due to be vacated, the United States Court of Appeals for the Ninth Circuit concluded that the arbitrator was "evidently partial" as a result of his failure to disclose his law firm's prior representations of the prevailing party's parent company. In reaching this conclusion, the court stated that "'evident partiality' is present when undisclosed facts show a 'reasonable impression of partiality'" and that "nondisclosure cases [do not] require[] proof of actual bias in showing 'evident partiality.'" *Schmitz*, 20 F.3d at 1046.

From page 65 of the slip opinion:

>       The *Schmitz* decision espouses the majority view in the federal courts in determining whether an "evident partiality" exists under 9 U.S.C. § 10(a)(2) in the context of a failure-to-investigate/failure-to-disclose case. See generally *New Regency Productions*, *supra*. We believe the holding in *Schmitz* is the better view and conclude that the "reasonable-impression-of-partiality" standard constituting an "evident partiality" under 9 U.S.C. § 10(a)(2) may be satisfied even though an arbitrator lacks actual knowledge of the facts giving rise to the conflict of interest when the arbitrator was under a duty to investigate in order to discover possible conflicts and failed to do so. In such a situation the arbitrator will be deemed to have constructive knowledge of the conflict of interest, and the failure to disclose the conflict may result in a "reasonable impression of partiality." *Schmitz*, 20 F.3d at 1048–49.

There is also no purpose to be served by this court's engaging in the same analysis employed by the Supreme Court of Alabama as it compared the persuasive quality of the rationales of the Ninth Circuit and the Eleventh Circuit on the subject at hand. Neither of these federal appellate courts has the authority to pronounce the law of Alabama. Not only was Morgan Keegan an actual party in *Municipal Workers*, but the facts and the legal

issues in that case and in this case are indistinguishable. *Municipal Workers* simply closes the door on Morgan Keegan.

## Conclusion

Either Morgan Keegan is asking this court to completely misread *Municipal Workers* or to ignore it. This court respectfully declines both of these implicit invitations. The *Municipal Workers* opinion is the functional equivalent of the Supreme Court of Alabama's responding to a question of controlling Alabama law certified to that court by this court. Any lingering doubt about the substantive law of Alabama as applicable to the undisputed facts in this case evaporated on April 3. Prior to *Municipal Workers*, an intellectually honest argument could be made, and was made, that in Alabama an arbitration award could not be challenged solely on the basis of an arbitrator's having failed to disclose a relationship with one of the parties. It is now clear that a party can successfully challenge an award without showing **actual** bias by an arbitrator and without showing a **knowing** non-disclosure of a fact that might call his impartiality into question. The Supreme Court of Alabama has now firmly joined the courts who find that the purpose of the Federal Arbitration Act can best be satisfied, not by placing on a complaining party the heavy burden of demonstrating actual bias or a knowing nondisclosure, but to place upon applicants for the powerful position of arbitrator the relatively light burden of

carefully examining their own backgrounds and revealing all facts that might cause a party to doubt their impartiality. In other words arbitrators must ascertain the relevant facts about their potential impact in the selection procedure in favor of disclosure. The arbitrator does not pass on his own qualifications. The parties do.

For these reasons Mendel Parties' motion for summary judgment will be granted by a separate order and Morgan Keegan's motion will be denied.

DONE this 26th day of May, 2015.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE